# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Bill Childers,

    Plaintiff,

    v.                                      Case No. 1:09cv173

Commissioner of Social Security        Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the court upon Magistrate Judge's Report and Recommendation ("R&R") that the decision of the Commissioner should be reversed and remanded for further proceedings pursuant to Sentence Four of 42 U.S.C § 405(g). (Doc. 17.)

The parties were given proper notice, pursuant to 28 U.S.C. § 636(b)(1)(C), including notice that the parties would waive further appeal if they failed to file objections to the R&R in a timely manner. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).[1] The Commissioner filed timely Objections to the R&R. (Doc. 18.)

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB on January 16, 2004, alleging that he was disabled beginning on December 26, 2002, due to chemical imbalance and shingles. Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested a hearing before an ALJ. An evidentiary hearing, at which Plaintiff was represented by

---

[1] A notice was attached to the Magistrate's Report and Recommendation regarding objections.

counsel, was held on June 19, 2007. The ALJ denied Plaintiff's applications. Plaintiff sought review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, which made the decision of the ALJ the final administrative decision of the Commissioner.

In the decision, the ALJ found that Plaintiff suffers from the severe impairments of post herpetic neuralgia, lumbar degenerative disc disease, dysthymia, and a history of polysubstance abuse in reported remission. The ALJ found further that Plaintiff retains the residual functional capacity ("RFC") for light work if he is: (1) allowed to alternated positions as needed, (2) limited to occasional stooping, (3) limited to low stress jobs that do not involve dealing with the public, are not fast-paced, do not involve production quotas, and do not require extended periods of concentration. The ALJ determined that Plaintiff could not perform his past relevant work as a plumber, janitor, or meter reader. However, the ALJ found that Plaintiff was not disabled because there were a significant number of jobs in the national economy that the claimant can perform.

## II. MAGISTRATE JUDGE'S R&R

In his R&R, the Magistrate Judge noted that Plaintiff did not challenge the ALJ's findings with respect to his alleged mental impairments. The Magistrate Judge then performed a thorough review of all the medical evidence in the record.

The Magistrate Judge noted that the ALJ rejected the opinion of Dr. Mervet Saleh, a treating physician, that Plaintiff was "totally disabled" for four reasons: (1) there is little objective evidence of any functional impairment which completely prevents Plaintiff from working; (2) Plaintiff resumed work eight months after Dr. Saleh expressed her opinion that Plaintiff was totally disabled; (3) Dr. Saleh's opinion was based in part on her assessment

of Plaintiff's mental limitations, an area reserved to psychiatrists and psychologists, not a pain specialist like Dr. Saleh; and (4) Dr. Saleh's own records varied from one visit to the next, and were internally inconsistent.

The Magistrate Judge noted that Dr. Saleh treated Plaintiff from October of 2004 until September of 2006. The Magistrate Judge noted that Dr. Saleh authored a "remarkably thorough four-page opinion" which detailed Plaintiff's functional limitations, her objective findings with regard to tenderness and limitations in range of motion, Plaintiff's course of treatment, and her opinion that Plaintiff was totally disabled. The Magistrate Judge noted that Dr. Saleh stated that medication was effective in controlling Plaintiff's pain, but because Plaintiff consistently reported that the pain was a "7-8" on a scale of 10 with the medication and a "10" without, the Magistrate Judge explained that the issue was to what degree Plaintiff's pain was controlled. Therefore, the Magistrate Judge concluded that Dr. Saleh's treatment notes are not inconsistent.

The Magistrate Judge also found that it was proper for Dr. Saleh to assess Plaintiff's psychological status as part of her evaluation of Plaintiff. The Magistrate Judge relied on several statements by Dr. Saleh: (1) that "Emotional and physiological factors influence perception of pain" and "comprehensive pain management includes the treatment of comorbid conditions such as mood depression;" and (2) "Anxiety is of central importance for coping with chronic pain and must constantly be addressed by the clinician to avoid escalations in pain with functional decompensation."

The Magistrate Judge acknowledged that Plaintiff worked part-time planting flowers in May of 2006. However, the Magistrate Judge noted that the record was silent as to how long that employment lasted and whether the job involved stooping or kneeling.

Finally, the Magistrate Judge addressed the concern that "the objective source of Plaintiff's pain does not correlate with the intensity of the pain Plaintiff reported and Dr. Saleh believed he experienced." The Magistrate Judge explained:

> One way to look at it is to conclude, as the ALJ did, that Plaintiff is exaggerating his symptoms or put another way, his subjective reports of pain are not fully credible. Another approach is to explore through the use of a medical expert the synergistic effect of anxiety and depression on the perception of pain. The ALJ chose the former; we suggest the latter.

In his Objections to the R&R, the Commissioner argues that the Magistrate Judge applied the wrong standard of review in that an ALJ's decision is not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The Commissioner also argues that the Magistrate Judge improperly concluded that Dr. Saleh's opinion was supported by the record.

### III. <u>ANALYSIS</u>

The Court's review of the Social Security Commissioner's decision is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The substantial evidence standard presupposes that "there is a zone of choice within which the [Commissioner] may proceed without interference from the court." *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir. 1987). Consequently, this Court should defer heavily to such findings by the Commissioner. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even

if substantial evidence also exists in the record to support a finding of disability. *Felisky,* 35 F.3d at 1035, *citing Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).

The Court notes that the Magistrate Judge's discussion of his approach versus the ALJ's approach could possibly be read in such a way that would lead one to conclude that the Magistrate Judge disregarded the foregoing standards. However, a complete reading of the R&R dispels any such notion. As the Magistrate Judge concluded: "Substantial evidence does not lead us to conclude that Plaintiff either is or is not disabled, but suggests that the matter be remanded for another look." It is clear from this statement alone that the Magistrate Judge found that the ALJ's opinion was not supported by substantial evidence.

The Court also finds that the Magistrate Judge did not err in finding that the ALJ improperly weighed Dr. Saleh's opinion.

Of course, it is well-settled that a physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (stating that "no special significance will be given to opinions of disability, even if they come from a treating physician") (internal quotations omitted).

However, aside from opinions regarding total disability, a treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2)(1999).

In determining the weight to assign a treating source's opinion, the Commissioner

considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.*

If a treating physician's opinion is not given controlling weight, the ALJ must continue to weigh it under a number of factors set forth in the Regulations: "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir.2004), *citing* 20 C.F.R. § 404.1527(d)(2). However, even if the treating physician's opinion is not given controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009), *quoting Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

Here, the ALJ determined that Dr. Saleh's opinion was not entitled to controlling weight, but then did not explain what weight was given to her opinion. The Sixth Circuit has explained that the ALJ must explain not just why a treating physician's opinion did not warrant controlling weight, but should also explain what weight was given to the treating

opinion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 246 (6th Cir. 2007). Where an ALJ fails to provide sufficient justification for the weight given to the opinions of a treating physician, his or her decision in this regard does not meet the requirements of 20 C.F.R. § 416.927, and cannot serve as substantial evidence. *Id.*

In addition, the ALJ failed to address the specific physical functional limitations found by Dr. Saleh. The ALJ stated:

> The only specific physical residual functional capacity assessment was made by the reviewing State Agency physician, who concluded that this person could perform a reduced range of light work (Edxhibit 14F). Dr. Saleh gave a general statement of disability in his [sic] narrative report to the attorney, but his client went back to work eight months later.

(Tr. 29.)

In a October 2004 letter to Dr. Osborn, who referred Plaintiff to Dr. Saleh, Dr. Saleh stated that Plaintiff was "only able to sit for 20 minutes, stand for 10 minutes or walk for 10 minutes, after which he experiences severe pain." (Tr. 275.) The findings of the state agency physician, referred to by the ALJ in his opinion, conflict with this opinion of Dr. Saleh. Dr. Torello, a non-examining physician, reviewed the records on October 5, 2004, and determined that Plaintiff had the ability to stand and/or walk for a total of about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour work day. However, the ALJ did not address this conflict in the record.

Nor did the ALJ address Dr. Saleh's October 2005 letter to Plaintiff's attorney, which the Magistrate Judge discussed in his R&R. Dr. Saleh explains that Plaintiff was referred to her to manage his chronic pain secondary to post herpatic neuralgia. (Tr. 291.) Dr. Saleh explained that Plaintiff has the following limitations: pain with lifting and doing repetitive activities; unable to push/pull or manipulate objects due to severe pain; unable

to do any overhead work/reaching; only able to sit, stand and/or walk for three to five minutes with constant change in position, after which he experiences severe pain; unable to bend/twist/climb/kneel/squat/push/pull, crawl or balance. (Tr. 292.) Dr. Saleh describes the results of physical examination, including findings of diffuse tenderness, swelling, muscle spasms and trigger points. (Tr. 292.) Dr. Saleh also states: "Of note [Plaintiff's] treatment has been complicated, due to the fact of additional testing or current testing has been impeded due to his insurance denials for authorization. Imaging testing there for [sic] has been sub optimal, and he could benefit from additional studies to determine the continued etiology of his persistent pain." (Tr. 292.) Dr. Saleh noted that the November 5, 2004 EMG study documented abnormal membrane irritability with prolongation of insertional activity in L5 distribution.[2] (Tr. 293.) Dr. Saleh noted that the impression was a combination of anterior superior iliac spine and adductor tubercle tendonitis as well as the neuropathym, but a repeat MRI was indicated but was impeded by authorization challenges. (Tr. 293.) Dr. Saleh explained that "Depression, anxiety and other psychological states can contribute to the onset of back pain, as well as, being the by product of chronic pain syndrome. These conditions can prolong the period of pain related to the injury." (Tr. 293) As the Magistrate Judge noted, the ALJ gave little if any credence to the relationship between Plaintiff's anxiety and depression and his pain.

    Given the two-year treatment relationship between Dr. Saleh and Plaintiff, the frequent visits with Dr. Saleh, the epidural steroid injections, physical therapy and other treatment Plaintiff received from Dr. Saleh, as well as Dr. Saleh's specialty in pain

---

[2] The EMG performed on November 5, 2004 shows "very rare abnormal membrane irritability, [Right] greater than [Left], along with prolongation of insertional activity in a L5 distribution bilaterally." (Tr. 280.)

management, Dr. Saleh's opinion was entitled to some weight, if not controlling weight.

The Court acknowledges, as did the Magistrate Judge, that there is little objective medical evidence which supports Plaintiff's allegations of pain. However, this lack of objective corroboration does not mean that Dr. Saleh's opinion is inconsistent with other substantial evidence in the record. For instance, in September of 2004, Dr. Vitols, a consultative examiner found during a physical exam that Plaintiff had hypersensitivity in dorsolumbar paravertebral area as well as the mid-axillary and anterior chest area. (Tr. 246) Dr. Vitols noted some restricted motion and spasm during physical exam, and positive straight leg raising is present on the right. (Tr. 246.) These objective physical findings would appear to be consistent with the findings of Dr. Saleh upon exam of Plaintiff.[3]

Based on the foregoing, the Court finds that the Magistrate Judge's recommendation that this matter be remanded is correct. As the Sixth Circuit has explained: "[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley*, 573 F.3d at 267, *quoting Wilson*, 378 F.3d at 545 (6th Cir. 2004).

Accordingly, the Magistrate Judge's R&R (Doc. 17) is hereby **ADOPTED**. It is hereby **ORDERED** that:

---

[3]They are also consistent with the findings of Dr. Udrea at the Dayton Center for Neurological Disorders. In May of 2006, Dr. Saleh referred Plaintiff to Dr. Udrea. (Tr. 383.) Upon physical exam, Dr. Udrea found some pain related weakness in the right lower extremity; an area of scarring involving the right L4 dermatome, and that same area is very tender to palpation; and straight leg raising sign is positive in the right lower extremity. (Tr. 384.)

1. The decision of the Commissioner be **REVERSED and REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g); and

2. This matter should be **ADMINISTRATIVELY CLOSED**.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett, Judge
                                              United States District Court